FILED
2019 MAY -8 PM 12:01

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

19MJ02048

| UNITED STATES OF AMERICA | § | Cause No. **DR 19 CR 1 1 6 9** |
|---|---|---|
| v. | § | |
| | § | **SEALED INDICTMENT** |
| | § | |
| | § | [VIO: COUNT ONE: 21 U.S.C. §§ |
| | § | 802(32)(A), 813, 841(a)(1) and (b)(1)(C) |
| MAHER FAKHOURY, | § | and 846, Conspiracy to Distribute |
| | § | Controlled Substances and Controlled |
| | § | Substance Analogues Resulting in |
| | § | Death; COUNT TWO: 21 U.S.C. §§ |
| | § | 802(32)(A), 813, 841(a)(1) and (b)(1)(C) |
| | § | and 846, Conspiracy to Distribute |
| | § | Controlled Substances and Controlled |
| | § | Substance Analogues Resulting in |
| | § | Serious Bodily Injury; COUNT THREE: |
| | § | 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1) |
| | § | and (b)(1)(C) and 846, Conspiracy to |
| | § | Possess With Intent to Distribute |
| | § | Controlled Substances and Controlled |
| | § | Substance Analogues; COUNT FOUR: |
| | § | 18 U.S.C. § 1956 (h), Conspiracy to |
| | § | Commit Money Laundering.] |

**Notice of Forfeiture Demand**

THE GRAND JURY CHARGES:

*Introduction*

1. In 1986, the Controlled Substances Act ("CSA") was amended by the Controlled Substance Analogue Enforcement Act. This amendment added 21 U.S.C. § 813, which provides: "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." The

term "controlled substance analogue" is defined in 21 U.S.C. § 802(32)(A) to be a substance which exhibits one or all of the following properties:

- has a chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

- has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

- with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

### *Synthetic Cannabinoids*

2. On July 9, 2012, the Synthetic Drug Abuse Prevention Act of 2012 was signed into law. The act permanently added to schedule I under Title 21, any material, compound, mixture or preparation which contains any quantity of cannabimimetic agents, or which contains their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation.

3. The following synthetic cannabinoid compounds are controlled substances or controlled substance analogues of the schedule I substances listed under Title 21 U.S.C. § 812 (d) containing such cannabimimetic agents and are relevant to this indictment:

- 5F-MDMB-PINACA: Methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido-3,3-dimethylbutanoate;

- FUB-AMB: 2-(1-(4-fluorobenzyl)-1H-indazole-3-carboxamido)-3-methylbutanoate;

- AB-PINACA: N-(1-Amino-3-methyl-1-oxobutan-2-yl)-1-pentyl-1H-indazole-3-carboxamide;
- XLR11: [1-(5-fluoropentyl)-1H-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone;
- AB-CHMINACA: N-(1-Amino-3-methyl-1-oxobutan-2-yl)-1-(cyclohexylmethyl)-1H-indazole-3-carboxamide;
- NM2201: Naphthalen-1-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate;
- ADB-FUBINACA: N-(1-Amino-3,3-dimethyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-1H-indazola-3-carboxamide; and
- 5F-AMB: Methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido)-3-methylbutanoate.

4. These synthetic cannabinoid compounds have a chemical structure similar to tetrahydrocannabinol ("THC"). THC is the psychoactive ingredient in marijuana.

5. These compounds come in liquid or powder form and are mixed with plant matter, such as the chopped leaves of marsh-mallow or damiana plants, so that the products can be smoked in order "to get high."

6. Beyond a controlled substance "high," these products can also cause hallucinations, paranoia, panic attacks, increased heart rate, and increased blood pressure.

### *Money Laundering*

7. Defendants ⸺⸺⸺⸺⸺⸺⸺⸺, ⸺⸺⸺⸺⸺⸺⸺⸺, and MAHER FAKHOURY generated large amounts of cash from the illicit sale of the above controlled substances and controlled substance analogue and used these criminal proceeds to facilitate and promote the operation of their illegal activities by purchasing additional chemicals, plant leaves, flavoring, packaging, and storage facilities, among other expenses, to further their illegal enterprise.

8. Defendants                    , and MAHER FAKHOURY attempted to conceal their illegal activities by placing the above-detailed illicit proceeds and assets purchased with those proceeds in the names of friends, relatives, or close associates to avoid detection of these proceeds and assets by government agencies. While these proceeds and assets are in the names or others, Defendants                  , and MAHER FAKHOURY continued to exercise dominion and control over the use, ownership and disposition of the proceeds and assets.

### *The Ghobryal Drug Trafficking Organization*

9. Defendant                   was the leader, organizer, and manager of the GHOBRYAL Drug Trafficking Organization, (the "DTO,") and, as such, owned full or partial interest in the following businesses that distribute synthetic cannabinoids: Luxor Matters LLC, San Pedro, CA; Omega Patch LLC, San Pedro, CA; Holy 7 Teas LLC, San Pedro, CA; Smokehouse Imports, Los Angeles, CA; Linear Homeopathic LLC, San Pedro, CA; Organica Today LLC, Elmwood Park, NJ; Teaganica LLC, San Pedro, CA; and Marina Bliss LLC, Rolling Hills Estates, CA. Through these businesses GHOBRYAL organized the obtaining of the raw materials for the production of the synthetic cannabinoids; coordinated with the manufacturers of the synthetic cannabinoids, in addition to his own employees and co-conspirators within the DTO, as to the amounts, strength, and flavors of the finished controlled substance; placed orders for the synthetic cannabinoids; distributed synthetic cannabinoids for resale, both in wholesale quantities and retail; and directed the storage and distribution of the synthetic cannabinoids.

10. Defendant                       was the co-leader, organizer, and manager of the DTO and owned full or partial interest in the following businesses that distribute synthetic cannabinoids: Optawise LLC, Marina Del Rey, CA; Commerce Yard LLC, Marina Del Rey,

CA; Patch Up Inc., Marina Del Rey, CA; National Remedies LLC, San Pedro, CA; and All Gate Inc., Marina Del Rey, CA. For and through these businesses WISEMAN constructed and maintained the websites on behalf of the DTO and facilitates and directs the distribution of the synthetic cannabinoids through the DTO's digital infrastructure.

11. Defendants MAHER FAKHOURY and ⎯⎯⎯⎯ assisted ⎯⎯⎯⎯, and the DTO by maintaining, financing, and organizing broader distribution networks for the DTO in both California and Texas. MAHER FAKHOURY owned full or partial interest in the following businesses that distribute synthetic cannabinoids: Fakhoury LLC, Winchester, CA and EuroSpice LLC, Winchester, CA. MAHER FAKHOURY further recruited individuals for the purpose of opening funnel accounts, or accounts established for the sole purpose of holding and receiving the illicit proceeds gained by the DTO. ⎯⎯⎯⎯ owned full or partial interest in Kimoosnack, LLC, D/B/A "Kimoosnack," Katy, TX, which distributes synthetic cannabinoids.

12. Defendant ⎯⎯⎯⎯ assisted the DTO by coordinating in the packaging and distribution of the synthetic cannabinoids from San Pedro, California. ⎯⎯⎯⎯ also owned full or partial interest in Dreamland Teas LLC, Winchester, CA, which distributes synthetic cannabinoids.

13. Defendants ⎯⎯⎯⎯ and ⎯⎯⎯⎯, and ⎯⎯⎯⎯ assisted the DTO by receiving and executing customer orders for synthetic cannabinoids through e-mail, website inquiries and/or chats, and telephone, all of which were tied to businesses established and controlled by ⎯⎯⎯⎯, or FAKHOURY.

14. Over the course of the conspiracy, the DTO stored, maintained, distributed, and possessed with the intent to distribute over 500 kilograms of a substance or mixture containing synthetic cannabinoids, schedule I controlled substances and controlled-substance analogues.

15. Over the course of the conspiracy, the DTO derived substantial income from the sale of the same synthetic cannabinoids, with the illicit proceeds exceeding $5,000,000 based on wholesale value.

### *A.K.'s Death Caused by the DTO's Product, "Spanish Devil"*

16. Over the course of the conspiracy, the DTO peddled strains of scheduled a synthetic cannabinoid, ADB-FUBINACA, combining it with other synthetic cannabinoid strains and marketing the mixed-strains as synthetic marijuana under the brand name, "Spanish Devil A/K/A Diablo Herbal Tea," (hereinafter, "Spanish Devil,") through its business entities and websites.

17. Over the course of the conspiracy, the DTO agreed to establish and operate business entity, "Kimoosnack" and sell the DTO's synthetic marijuana through Kimoosnack's website located at "https://kimoosnack.com."

18. Over the course of the conspiracy, the DTO shared in the profits generated by Kimoosnack from its sales of Spanish Devil.

19. On or about June 9, 2018, in Charleston, South Carolina, A.K. was found unconscious by local authorities. In A.K.'s backpack, authorities discovered a package of Spanish Devil filled with chopped leafy contents. A.K. was transported to the hospital, revived shortly thereafter and treated by the medical staff. A.K. admitted to authorities that he/she ingested Spanish Devil immediately before losing consciousness.

20. On or about June 11, 2018, in Charleston, South Carolina, A.K. was found unconscious next to a glass pipe with burnt residue and a package of Spanish Devil and its contents. A.K. was declared dead at the scene by responding medical authorities.

21. Toxicology and medical examination forensic reports concluded A.K. died from acute drug intoxication, namely, ingestion of ADB-FUBINACA.

22. The glass pipe and the contents found in and around the package of Spanish Devil at A.K.'s death scene were taken into custody and examined by the Drug Enforcement Administration. The glass pipe's residue and the contents in the package of Spanish Devil all tested positive for ADB-FUBINACA.

23. Roughly a week before A.K.'s death, on or about June 4, 2018, A.K. ordered Spanish Devil from the DTO through Kimoosnack. From its California base of operations, the DTO shipped Spanish Devil to A.K. at his residence in Alexandria, Virginia.

## COUNT ONE
[21 U.S.C. § 802(32)(A), 813, 841(a)(1) and (b)(1)(C) and 846]

Paragraphs 1-23 are hereby incorporated by reference as if fully set forth.

From on or about April 1, 2015, through on or about the date of this indictment, in the Western District of Texas and elsewhere, Defendants,

MAHER FAKHOURY

knowingly, intentionally, and unlawfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, that is, to knowingly, intentionally, and unlawfully distribute a quantity of mixtures and substances containing a detectable amount of synthetic cannabinoids, including, but not limited to, the following substance:

- ADB-FUBINACA: N-(1-Amino-3,3-dimethyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-1H-indazola-3-carboxamide,

which is a schedule I controlled substance and controlled substance analogue as defined in 21 U.S.C. § 802(32), knowing that it was intended for human consumption, as provided in 21 U.S.C. § 813, and the distribution of said substance resulted in the death of A.K., all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Section 846.

## COUNT TWO
[21 U.S.C. § 802(32)(A), 813, 841(a)(1) and (b)(1)(C) and 846]

Paragraphs 1-23 are hereby incorporated by reference as if fully set forth.

From on or about April 1, 2015, through on or about the date of this indictment, in the Western District of Texas and elsewhere, Defendants,

MAHER FAKHOURY,

knowingly, intentionally, and unlawfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, that is, to knowingly, intentionally, and unlawfully distribute a quantity of mixtures and substances containing a detectable amount of synthetic cannabinoids, including, but not limited to, the following substance:

- ADB-FUBINACA: N-(1-Amino-3,3-dimethyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-1H-indazola-3-carboxamide,

which is a schedule I controlled substance and controlled substance analogue as defined in 21 U.S.C. § 802(32), knowing that it was intended for human consumption, as provided in 21 U.S.C. § 813, and the distribution of said substance resulted in serious bodily injury to A.K., all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Section 846.

COUNT THREE
[21 U.S.C. § 802(32)(A), 813, 841(a)(1) and (b)(1)(C) and 846]

Paragraphs 1-23 are hereby incorporated by reference as if fully set forth.

From on or about April 1, 2015, through on or about the date of this indictment, in the Western District of Texas and elsewhere, Defendants,

MAHER FAKHOURY,

knowingly, intentionally, and unlawfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, that is, to knowingly, intentionally, and unlawfully possess with the intent to distribute a quantity of mixtures and substances containing a detectable amount of synthetic cannabinoids, including, but not limited to, the following substances:

- 5F-MDMB-PINACA: Methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido-3,3-dimethylbutanoate;

- FUB-AMB: 2-(1-(4-fluorobenzyl)-1H-indazole-3-carboxamido)-3-methylbutanoate;

- AB-PINACA: N-(1-Amino-3-methyl-1-oxobutan-2-yl)-1-pentyl-1H-indazole-3-carboxamide;

- XLR11: [1-(5-fluoro-pentyl)-1H-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone;

- AB-CHMINACA: N-(1-Amino-3-methyl-1-oxobutan-2-yl)-1-(cyclohexylmethyl)-1H-indazole-3-carboxamide;

- NM2201: Naphthalen-1-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate;

- ADB-FUBINACA: N-(1-Amino-3,3-dimethyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-1H-indazola-3-carboxamide; and

- 5F-AMB: Methyl 2-(1-(5-fluoropentyl)-1H-indazole-3-carboxamido)-3-methylbutanoate,

which are all schedule I controlled substances and controlled substance analogues as defined in 21 U.S.C., § 802(32), knowing that the analogue substances were intended for human consumption as provided in 21 U.S.C. § 813, all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Section 846.

## COUNT FOUR
## [18 U.S.C. § 1956(h)]

Paragraphs 1-23 are hereby incorporated by reference as if fully set forth.

From on or about April 1, 2015, through on or about the date of this indictment, in the Western District of Texas and elsewhere, Defendants,

MAHER FAKHOURY,

knowingly, intentionally, and unlawfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, that is, to conspire to commit money laundering by conducting and attempting to conduct financial transactions by making bank deposits, withdrawals, and interstate and international wire transmissions, which in fact involved the proceeds of specified unlawful activities, that is, unlawfully, willfully, and knowingly conspiring to possess with the intent to distribute a quantity of mixtures and substances containing a detectable amount of synthetic cannabinoids as previously set forth in Count Three of this indictment, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and Section 846, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity,

with the intent to promote the carrying on of the specified unlawful activity and knowing that the transactions were designed to conceal the nature, source, location, ownership, or control of the specified unlawful activity's proceeds. All in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i) & (B)(i), and 1956(a)(2)(A) & (B)(i).

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE

### I.
### Drug Violations and Forfeiture Statutes
[Title 21 U.S.C. §§813, 841(a)(1) & (b)(1)(C) and 846, subject to forfeiture pursuant to Title 21 U.S.C. §§ 853(a)(1) and (2)]

As a result of the foregoing criminal violations set forth in Counts One through Three, the United States of America gives notice to Defendants

MAHER FAKHOURY, _____, and _____ of its intent to seek the forfeiture of property upon conviction and as part of any sentence pursuant to Fed. R. Crim. P. 32.2 and Title 21, United States Code, Sections 853(a)(1) and (2), which state:

> **Title 21 U.S.C. § 853. Criminal forfeitures**
> **(a) Property subject to criminal forfeitures**
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

### II.
### Money Laundering Violations and Forfeiture Statutes
[Title 18 U.S.C. 1956(h) subject to forfeiture pursuant to Title 18 U.S.C. § 982 (a)(1)]

As a result of the foregoing criminal violations set forth in Count Four, the United States of America gives notice to Defendants _____

MAHER FAKHOURY, of its intent to seek the forfeiture of property upon

conviction and as part of any sentence pursuant to Fed. R. Crim. P. 32.2 and Title 18, United States Code, Sections 982(a)(1), which states:

**Title 18 U.S.C. § 982. Criminal forfeiture**
(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the following:

### III.
### Money Judgment

**Money Judgment**: A sum of money equal to the value of the proceeds obtained, directly or indirectly, from the Drug Counts described above and/or equal to the value of the property involved in the Money Laundering Count described above for which each Defendant is solely liable.

### IV.
### Substitute Assets

If any of the property subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendants

- a. cannot be located upon the exercise of due diligence;
- b. has been transferred or sold to, or deposited with, a third party;
- c. has been placed beyond the jurisdiction of the court;
- d. has been substantially diminished in value; or
- e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p), Title 18, United States Code, Section 982(b)(1), and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

FOREPERSON

JOHN F. BASH
United States Attorney

By: _____
PAUL T. HARLE
Assistant United States Attorney

SEALED:
UNSEALED: XX

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

COUNTY: <u>LOS ANGELES COUNTY</u>   USAO #: <u>2018R02919</u>

DATE: <u>MAY 8, 2019</u>   MAG. CT. #: <u>MATTER</u>

AUSA: <u>PAUL T. HARLE</u>

DEFENDANT: <u>MAHER FAKHOURY</u>

**DR 19 CR 1169-(03)-AM**

CITIZENSHIP: <u>USA</u>

INTERPRETER NEEDED: <u>NO</u>   LANGUAGE: <u>ENGLISH</u>

DEFENSE ATTORNEY:

ADDRESS OF ATTORNEY:

DEFENDANT IS: <u>NOT DETAINED</u>   DATE OF ARREST:

BENCH WARRANT NEEDED: <u>YES</u>

PROBATION OFFICER: <u>N/A</u>

NAME AND ADDRESS OF SURETY: <u>N/A</u>

YOUTH CORRECTIONS ACT APPLICABLE: <u>NO</u>

PROSECUTION BY: <u>INDICTMENT</u>

OFFENSE: (Code & Description): <u>Count 1 - 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 846, Conspiracy to distribute a Controlled Substance Analogue resulting in death; Count 2 - 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 846, Conspiracy to distribute a Controlled Substance Analogue resulting in serious bodily injury; Count 3 - 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 846, Conspiracy to possess with intent to distribute a Controlled Substance Analogue; Count 4 – 18 U.S.C. 1956(h), Conspiracy to Commit Money Laundering.</u>

OFFENSE IS A: <u>FELONY</u>

MAXIMUM SENTENCE: <u>Counts 1-2: 20 years to life imprisonment; up to $10,000,000 fine; at least 3 years of supervised release; restitution; $100 special assessment; Count 3: Up to 20 years imprisonment; up to $10,000,000 fine; at least 3 years' supervised release; $100 special assessment; Count 4: up to 20 years; up to $500,000 or twice value; up to 3 years' supervised release; $100 special assessment.</u>PENALTY IS MANDATORY: <u>YES & NO</u>

REMARKS: <u>See above</u>

W/DT-CR-3